# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **DIANE HARRIS,** | ) |
| Plaintiff, | ) |
| vs. | ) Civil Action No. 5:18-CV-0886-CLS |
| **WAL-MART STORES EAST, L.P.,** | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This is a slip and fall case. Plaintiff, Diane Harris, seeks to recover damages for personal injuries she sustained while shopping in the Huntsville, Alabama store owned and operated by defendant, Wal-Mart Stores East, L.P. ("Wal-Mart"), allegedly as a result of the negligence and/or wantonness of its employees.[1] The action was commenced in this court under the diversity of citizenship statute, 28 U.S.C. § 1332(a)(1).[2] The following opinion addresses two motions filed by Wal-Mart: the motion to strike the affidavit of Dexter Morris, and preclude plaintiff from

---

[1] *See* doc. no. 1 (Complaint).

[2] "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States; . . . ." 28 U.S.C. § 1332(a)(1). Although plaintiff was a resident of Alabama on the date of the events leading to this suit, she now resides in Georgia. Wal-Mart was incorporated, and is headquartered, in states other than either Alabama or Georgia. Plaintiff seeks damages in an amount greater than $75,000. *See* doc. no. 1, ¶¶ 1, 2, 4.

using him as a witness;[3] and, Wal-Mart's motion for summary judgment.[4] Following consideration of the motions, pleadings, briefs, and evidence, this court concludes, for the following reasons, that both motions should be granted.

## I. SUMMARY OF FACTS

Plaintiff regularly shopped at the Wal-Mart store located at 11610 South Memorial Parkway in Huntsville, Alabama ("the store") prior to the date of the incident leading to this suit.[5] She had not previously experienced any problems while doing so.[6] Friday, June 24, 2016, however, was different. Plaintiff entered the store with her ten-year-old great-grandson, Caleb, for the purpose of purchasing chicken and french fries from the frozen food section.[7] They walked from the front entrance toward the back of the store, with Caleb trailing only by a few steps behind his grandmother.[8] The store was well-lit, clean, and orderly, and plaintiff saw nothing to indicate there might be a spill or other wet spot on the floor of the frozen food

---

[3] *See* doc. no. 29.

[4] *See* doc. no. 22.

[5] *See* doc. no. 22-3 (Deposition of Diane Harris), at 36-37, 51.

[6] *Id.* at 36-37, 51.

[7] *Id.* at 38, 46-47; doc. no. 22-4 (Customer Incident Report, stating the date and time of the incident). Plaintiff testified that she entered the store sometime between 4:00 and 5:30 p.m., but the Incident Report Wal-Mart employees completed after the fall stated that it incident occurred at 2:06 p.m. *Compare* doc. no. 22-3 (Deposition of Diane Harris), at 49, *with* doc. no. 22-4 (Customer Incident Report). In any event, the exact time of the incident is not material to the disposition of defendant's motion for summary judgment.

[8] Doc. no. 22-3 (Deposition of Diane Harris), at 48, 51-52, 54-55.

section.[9]

As plaintiff began to turn right into the second frozen food aisle, she walked around a silver-colored pillar at the corner of the aisle, and Caleb followed slightly to her left.[10] She did not see any water or other liquid on the floor; instead, she saw only that the floor was "very shiny," as though it had just been waxed.[11] Nevertheless, as plaintiff rounded the corner, her foot slipped and twisted. She attempted to stop her fall with her hand, but was not successful, and her bottom hit the floor.[12] She also struck the pillar with her right arm, and twisted her knee and ankle.[13]

Plaintiff did not see any liquid on the floor during or after her fall, but she did feel liquid with her hand as she attempted to arise from the floor. Her clothing absorbed the remainder of the liquid.[14] She does not know the color or nature of the liquid, the size of the puddle, the means by which it came to be on the floor, the length of time it had been on the floor, or whether Wal-Mart had received a report about it prior to her fall.[15] She also did not see any wet footprints or shopping cart

---

[9] *Id.* at 51, 64-65.
[10] *Id.* at 47-48, 55-59.
[11] *Id.* at 59.
[12] *Id.* at 50, 60-62.
[13] Doc. no. 22-4 (Customer Incident Report).
[14] Doc. no. 22-3 (Deposition of Diane Harris), at 59-60, 63-64.
[15] *Id.* at 64.

tracks originating from the area of her fall.[16]

Paul Blasius was an inside department manager in the store's automotive care center on the date of plaintiff's fall.[17] His duties included ensuring that the store remained in a reasonably safe condition for the use of Wal-Mart's customers and "associates" (*i.e.*, employees).[18] To that end, he and other associates were responsible for monitoring the store's floors for safety, and conducting periodic checks of the floors, not only in his own department, but also throughout the store.[19] Wal-Mart trained him to clean up spills when possible, but if a spill was too large for one person to clean, to stand guard over it until another associate was able to deliver the necessary cleaning supplies.[20]

Balsisus's shift ended just before plaintiff's fall on June 24th. He clocked out and did some personal shopping before departing for home. As he was walking down the main aisle that extended from the front to the back of the store in the grocery section, he saw plaintiff fall as she "turned the corner onto one of the freezer aisles."[21] Balsius immediately walked over to plaintiff and asked if she was all right. Balsisus

---

[16] *Id.* at 64-65.
[17] Doc. no. 22-6 (Affidavit of Paul Blasius), ¶ 2.
[18] *Id.* ¶ 3.
[19] *Id.*
[20] *Id.* ¶ 4.
[21] *Id.* ¶ 5.

did not have any medical training; and, because he did not know the extent of plaintiff's injuries, he did not touch her or attempt to lift her from the floor. Instead, plaintiff rose from the floor on her own, without assistance. Balsius waited with her until an on-duty store manager arrived, and then he procured a chair for her to sit upon.[22]

After plaintiff stood up, Balsius observed a "small clear puddle of liquid," approximately four inches in diameter, on the floor near the spot where she had slipped and fallen.[23] He later stated that:

> There were no other puddles. There were no splatters of liquid around the puddle. The puddle was approximately six inches from the freezer and there was no trail of liquid leading from the freezer to the puddle. There was no liquid around the freezer other than this one four inch puddle which was located approximately six inches away from the freezer. There were no footprints, shopping cart tracks or any other marks in or around the puddle of clear liquid. There were no containers on the floor from which the puddle could have originated. I do not know how the puddle came to be on the floor.

Doc. no. 22-6 (Affidavit of Paul Blasius), ¶ 7. Blasius did not observe the puddle on the floor before plaintiff fell, and he had no knowledge of anyone reporting the puddle to Wal-Mart associates or managers before her fall.[24]

---

[22] *Id.* ¶ 6.
[23] Doc. no. 22-6 (Affidavit of Paul Blasius), ¶ 7.
[24] *Id.* ¶ 8.

Scharlet Shackelford was the store's assistant manager during June of 2016.[25] As in the case of Blasius, Shackelford's job duties included ensuring that the store remained in a reasonably safe condition for the use of customers and employees. That required her to personally monitor the floors for safety and to conduct periodic checks. As a manager, it also required Shackelford to direct maintenance employees to "continuously walk the sales floor looking for hazards," and to "spot clean if necessary."[26] Shackleford reiterated Wal-Mart's policy of training employees to either clean up a spill, or to stand guard over the spill until it had been removed.[27]

Shackelford received notice of plaintiff's fall by radio transmission. She "immediately went to the frozen food aisle and saw [plaintiff] leaning up against the freezer and a child standing with her."[28] Plaintiff told Shackelford that she had slipped and hit her right arm on the silver-colored pillar at the end of the aisle. Plaintiff did not want an ambulance to be called. Consequently, Shackelford prepared a written Incident Report, and plaintiff completed her shopping and left the store.[29] Shackleford observed a single, four-inch-wide puddle of clear liquid near the corner of the aisle where plaintiff fell. The puddle was approximately six inches from the

---

[25] Doc. no. 22-7 (Affidavit of Scharlet Shackelford), ¶ 2.
[26] *Id.* ¶ 3.
[27] *Id.* ¶ 5. *Nota bene*: Shackleford's affidavit does not contain a paragraph 4.
[28] *Id.* ¶ 6 (alteration supplied).
[29] *Id.*

nearest freezer, but Shackleford did not see a trail of liquid leading from the freezer to the puddle.[30] She inspected the nearest freezer, but it was not leaking, and neither were any of the other freezers in the frozen food section.[31] No one had reported the puddle prior to plaintiff's fall, and Wal-Mart did not have any other knowledge of it.[32]

Plaintiff testified that none of the Wal-Mart employees who assisted her said anything to indicate that other customers had fallen in the same area. She also acknowledged that they did not seem to be aware of any freezer leaks or any other problems with liquid on the floor in that area.[33]

Plaintiff's right ankle, leg, buttock, and arm hurt the day following her fall, and so she drove herself to the emergency room. X-rays did not show any broken bones. The emergency room physician diagnosed her as suffering from sprains, prescribed a splint, and instructed her to follow up with her primary physician, which she did the following week.[34] Plaintiff's primary physician referred her to an orthopedic specialist, who conducted MRIs and prescribed physical therapy.[35]

## II. DEFENDANT'S MOTION TO STRIKE

---

[30] *Id.* ¶ 7.
[31] Doc. no. 22-7 (Affidavit of Scharlet Shackelford), ¶ 8.
[32] *Id.* ¶ 9.
[33] Doc. no. 22-3 (Deposition of Diane Harris), at 74-75.
[34] *Id.* at 83-85.
[35] *Id.* at 88-90.

Plaintiff submitted the affidavit of Dexter Morris in support of her response to defendant's motion for summary judgment.[36] Her attorney had contracted with Mr. Morris for the purpose of "conduct[ing] an investigation into this matter and assist[ing] in providing an opinion on the theory of the case."[37] Morris interviewed an unspecified number of Wal-Mart employees, and visited "several different [but also an unspecified number of] Wal-Mart stores."[38] He also reviewed surveillance video, photographs, plaintiff's deposition testimony, and the affidavits of other witnesses.[39]

Morris says he "learned that [Wal-Mart] employees are not trained on wiping down the freezer doors and that water is typically observed accumulating on the floor under the cooler door."[40] When reviewing the surveillance video, he "noticed that no one came down the aisle near the Plaintiff's fall with anything that would have caused a wet substance to spill or drip on the floor nearly an hour before Plaintiff's fall."[41] He also noticed "several Wal-Mart employees walk past the freezer cooler near the location of the fall and did not notice anyone open the freezer door or check the floor

---

[36] Doc. no. 28-2 (Affidavit of Dexter Morris).

[37] *Id.* ¶ 2 (alterations supplied).

[38] *Id.* ¶ 3.

[39] *Id.*

[40] *Id.* ¶ 4 (alteration supplied).

[41] *Id.* ¶ 5.

for any residual condensation that may have slid [*sic*] to the floor."[42]

During his visits to other Wal-Mart stores, Morris noticed "the freezer coolers near the aisle where Plaintiff fell all had varying levels of condensation on the door."[43] He "inspected each of the doorways and noticed that a significant amount of water had accumulated at the bottom of the door, which caused a slow drip onto the floor."[44] He also observed during his store visits that "a few of the coolers had a two to four-inch puddle of water near the base of the freezer," and he stated: "Based upon my height level, it did not appear that any substance was on the floor, however, when I kneeled down to touch the floor, I could see and feel the puddle of water."[45]

Based upon such considerations, Morris tendered the following opinions:

> 9. In this case, based upon how small the puddle was, the proximity to the freezer and the clear color of the puddle, it is my opinion that the wet substance that Plaintiff slipped on came from drips of water from condensation on the freezer cooler.
>
> 10. From my review of the evidence and interviews with store managers and employees, it is my opinion that the Wal-Mart employees charged with inspecting the freezer coolers in the Huntsville store, in this case, failed to complete a thorough inspection, which allowed the water to accumulate near the floor of the freezer that caused Plaintiff to slip and fall.

---

[42] Doc. no. 28-2 (Affidavit of Dexter Morris), ¶ 6.
[43] *Id.* ¶ 7.
[44] *Id.*
[45] *Id.* ¶ 8.

Doc. no. 28-2 (Affidavit of Dexter Morris), ¶¶ 9-10.

The parties dispute whether Morris should be considered a lay or expert witness,[46] but that distinction is not relevant, because plaintiff did not disclose Morris as a witness of any sort before submitting his affidavit in support of her response to defendant's motion for summary judgment. Plaintiff's attorney does not deny that she failed to disclose Morris as an expert witness before the Scheduling Order deadline.[47] She also does not deny that she failed to disclose him as a fact witness. Instead, she argues that this court should excuse her failures.

First, counsel asserts that she did not initially plan for Morris to serve as a witness, but only as an investigator whose purpose was to assist her "due diligence in investigating the veracity of Plaintiff's claim . . . ."[48] Morris may have started out as "just" a pre-complaint investigator, but he became a witness when plaintiff offered his affidavit as evidence in opposition to defendant's motion for summary judgment. If plaintiff desired the privilege of using Morris's testimony for that or any other

---

[46] Morris states that plaintiff retained him to "assist in providing *an opinion* on the theory of the case." *Id.* ¶ 2 (emphasis supplied). After he conducted an investigation, he offered *opinions* regarding the origin of the liquid on which plaintiff slipped and the failure of Wal-Mart employees to inspect for excess liquid. *Id.* ¶¶ 9-10.

[47] *See* doc. no. 13 (Scheduling Order), ¶ 4 (requiring plaintiff to disclose expert witnesses by January 18, 2019).

[48] Doc. no. 32 (Plaintiff's Response And Opposition To Defendant's Motion To Strike Affidavit Of Dexter Morris And To Preclude The Plaintiff From Using Dexter Morris As A Witness In This Case), at 1-2 (ellipsis supplied).

purpose, she should have disclosed him as a potential witness at some point prior to the close of discovery.

Plaintiff's counsel also attempts to excuse her failure to file the initial disclosures required by Federal Rule of Civil Procedure 26(a)(1)(A) by asserting that plaintiff "was the only witness identified at that time and all medical documentation had previously been provided to Defendant's client."[49] Plaintiff cannot choose to opt out of the discovery requirements of the Federal Rules just because she thinks there is no point, or that defendant has received the required information by other means. She violated, without excuse, Rule 26's requirement to disclose "the name . . . of each individual likely to have discoverable information . . . that [she] may use to support [her] claims or defenses." Fed. R. Civ. P. 26(a)(1)(A)(i) (alterations and ellipses supplied). Counsel also failed to supplement her disclosures pursuant to Federal Rule of Civil Procedure 26(e), after she realized she would be relying upon additional witness testimony.

Plaintiff also did not disclose Morris in response to defendant's interrogatory requesting her to identify "any witness who has knowledge of the incident *or claims made the basis of this suit* . . . ." Doc. no. 29-1 (Defendant's First Interrogatories to Plaintiff), ¶ 6 (emphasis supplied). Plaintiff's counsel attempts to excuse that failure

---

[49] *Id.* at 2.

by asserting that Morris was not a "witness to the incident."[50] Morris may not have been an eye-witness, but he *does* purport to have knowledge of the incident and/or of plaintiff's claims. Plaintiff cannot reasonably believe that defendant was only asking her to identify eye-witnesses and expert witnesses, or that she would be allowed to present a new witness after discovery had been completed, at which point defendant would have no opportunity to depose the witness or offer any counter testimony.

Finally, plaintiff acknowledges that she failed to file a final witness list in accordance with this court's Scheduling Order, and that she, therefore, did not list Morris or any other witness. She asks the court to excuse that failure because her "attorney confused the scheduling order and the report of the parties[,] operating under the impression that the final list was due fifteen days before the trial date."[51] The court might be willing to overlook counsel's misunderstanding of the Scheduling Order deadlines, if plaintiff had made any effort to disclose Morris as a witness at any point prior to the deadline for filing final lists, but she did not. She also did not make any attempt to file a final list *after* the Scheduling Order deadline, despite now being clearly aware of her previous failures.

Because plaintiff failed to disclose Dexter Morris as either an expert *or* lay

---

[50] *Id.*

[51] *Id.* at 5 (alteration supplied).

witness (*i*) in her initial disclosures, (*ii*) in response to defendant's interrogatories, (*iii*) in her final witness list, or (*iv*) at any other time prior to filing a brief in response to defendant's motion for summary judgment, she is not entitled to the benefit of Morris's testimony. Morris's affidavit will be stricken, and plaintiff will not be permitted to use his testimony for any purpose.

### III. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56 provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In other words, summary judgment is proper "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "In making this determination, the court must review all evidence and make all reasonable inferences in favor of the party opposing summary judgment." *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (*en banc*) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)). Inferences in favor of the non-moving party are not unqualified, however. "[A]n inference is not reasonable if it is only a guess or a possibility, for such an inference is not based on the evidence, but

is pure conjecture and speculation." *Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1324 (11th Cir. 1983) (alteration supplied). Moreover,

> [t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is *material* to an issue affecting the outcome of the case. The relevant rules of substantive law dictate the materiality of a disputed fact. A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.

*Chapman*, 229 F.3d at 1023 (quoting *Haves*, 52 F.3d at 921) (emphasis and alteration supplied). *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986) (asking "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law").

## A. Plaintiff's Negligence Claim

The elements of a claim of negligence in a slip-and-fall case under Alabama law were summarized by that State's Supreme Court in *Kmart Corp. v. Bassett*, 769 So. 2d 282 (Ala. 2000), as follows:

> "It is a well-established rule of law in this state that in order to prove a claim of negligence a plaintiff must establish that the defendant breached a duty owed by the defendant to the plaintiff and that the breach proximately caused injury or damage to the plaintiff." *Lowe's Home Centers, Inc. v. Laxson*, 655 So. 2d 943, 945-46 (Ala. 1994). The duty owed by a premises owner to an invitee is also well established:
>
> > "The owner of premises owes a duty to business invitees to

-14-

> use reasonable care and diligence to keep the premises in a safe condition, or, if the premises are in a dangerous condition, to give sufficient warning so that, by the use of ordinary care, the danger can be avoided."
>
> *Armstrong v. Georgia Marble Co.*, 575 So. 2d 1051, 1053 (Ala. 1991). This duty does not, however, convert a premises owner into an insurer of its invitees' safety. *See Hose v. Winn-Dixie Montgomery, Inc.*, 658 So. 2d 403, 404 (Ala.1995). Moreover, the mere fact that a business invitee is injured does not create a presumption of negligence on the part of the premises owner. *See id.* Rather, a premises owner is liable in negligence only if it "fail[s] to use reasonable care in maintaining its premises in a reasonably safe manner." *Id.*

*Kmart Corp. v. Bassett*, 769 So. 2d at 284-85 (alteration in original). To prove that a breach of Wal-Mart's duty of reasonable care caused her to fall and suffer injuries, plaintiff must show:

> that the alleged substance that caused her to fall had been on the floor for such a length of time that constructive notice of its presence could be imputed to the defendants; that the defendants had actual notice that the substance was on the floor; or that the defendants were delinquent in not discovering and removing the substance. . . .

*Seale v. Target Corp.*, 333 F. Supp. 3d 1272, 1278 (N.D. Ala. 2018) (quoting *Ex parte Wal-Mart Stores, Inc.*, 806 So. 2d 1247, 1249 (Ala. 2001)).

Plaintiff does not claim that Wal-Mart had actual notice of any liquid on the floor in the area where she fell. Instead, she relies upon the theories of constructive notice and delinquency.[52] To prove constructive notice, direct evidence of how long

---

[52] *See* doc. no. 28-1 (Memorandum Brief in Support of Plaintiff's Opposition to Defendant's Motion for Summary Judgment), at 11 ("Specifically, Defendant asserts that it is not liable for Ms.

the substance had been on the floor is not required. Instead,

> [i]n some cases it is permissible to allow a jury to infer the length of time from the nature and condition of the substance. This has been allowed where the substance is dirty, crumpled, mashed, or has some other characteristic which makes it reasonable to infer that the substance has been on the floor long enough to raise a duty on the defendant to discover and remove it.

*Cash v. Winn-Dixie Montgomery, Inc.*, 418 So. 2d 874, 876 (Ala. 1982) (citing *S. H. Kress & Company v. Thompson*, 267 Ala. 566, 103 So. 2d 171 (1957)) (alteration supplied). Here, there is no direct or circumstantial evidence of how long the liquid on which plaintiff slipped had been on the floor. Plaintiff did not see the liquid before her fall, and neither did any Wal-Mart employee. A large sign hanging from the ceiling blocks the view of the surveillance camera of the area in which plaintiff fell. Consequently, there is no video evidence of a spill or leak occurring. No witness observed any wet shopping cart tracks or footprints originating from the puddle, and no witness has described the liquid as anything other than clear. Thus, there is no indication that other customers or employees had encountered the puddle, or even that it had been present long enough to attract dirt. Because there is no evidence indicating the presence of the liquid for any length of time before plaintiff's

---

Harris' fall because they did not have actual or constructive knowledge of the substance Ms. Harris slipped on. Conversely, *Plaintiff contends that Defendant had constructive knowledge and was delinquent in failing to inspect the freezer door and floor area prior to Ms. Harris' fall.*") (emphasis supplied).

fall, plaintiff cannot prove that defendant had constructive notice of the liquid. *See Vargo v. Warehouse Groceries Management, Inc.*, 529 So. 2d 986, 987 (Ala. 1988) (finding no constructive notice when, "[f]or all the evidence put forth, the water may have been dropped or leaked on the floor only minutes before [the plaintiff] fell") (alterations supplied).

To show that defendant was delinquent in failing to discover and clean up the liquid, plaintiff would need to prove that: (1) defendant failed to establish adequate inspection procedures, or failed to perform an adequate inspection in accordance with store policy; *and* (2) that the liquid "was on the floor for a sufficient period such that an adequate inspection would have discovered it." *Tucker v. Wal-Mart Stores, Inc.*, 89 So. 3d 795, 800-01 (Ala. Civ. App. 2012). *See also S.H. Kress & Co.*, 267 Ala. at 569, 103 So. 2d at 174; *Hale v. Kroger Limited Partnership I*, 28 So. 3d 772, 783 (Ala. Civ. App. 2009). Plaintiff cannot make either showing. She cannot refute defendant's evidence that Wal-Mart trained its associates and management employees to conduct periodic safety checks of the floor, clean up smaller spills, and create a barrier for larger spills until they can be cleaned up. Wal-Mart also had a policy of employing maintenance associates to continuously monitor the sales floor for hazards and remove them when necessary. Plaintiff has not argued that those procedures are inadequate, and she has no evidence that Wal-Mart failed to follow the procedures

on the day of her fall. Even if she could prove that Wal-Mart failed to perform an adequate inspection, she has no evidence that the liquid had been on the floor long enough to be discovered during an adequate inspection.

Plaintiff also attempts to make two arguments with regard to Wal-Mart's maintenance of its freezers, but neither argument has an evidentiary basis. First, she asserts that Wal-Mart does not train its employees to wipe down the freezer doors, but the only evidence she offers in support of that assertion is the affidavit of Dexter Morris, which has been stricken.[53] She also asserts that the surveillance video reveals the failure of Wal-Mart's safety engineers to inspect the freezer for leaks and/or water accumulation prior to plaintiff's fall, but, as discussed above, the area of plaintiff's fall is not visible in the video.

There is no other evidence to support plaintiff's theory that the liquid on which she slipped originated from a freezer. The only puddle anyone saw on the floor was located six inches from the nearest freezer, and there was no trail leading from the freezer to the puddle. Plaintiff asserts that any trail of liquid may have been absorbed by her clothing after she fell, but she has nothing more than conjecture to support that assertion. Finally, plaintiff did not inspect the freezer, whereas Wal-Mart offered the

---

[53] *See* doc. no. 28-1 (Memorandum Brief in Support of Plaintiff's Opposition to Defendant's Motion for Summary Judgment), at 10.

affirmative testimony of its assistant store manager that the freezer was not leaking.[54]

In summary, plaintiff has not produced evidence that defendant breached its duty to provide reasonably safe premises. Defendant did not have actual or constructive notice of any dangerous liquid on the floor, and defendant was not delinquent in failing to discover and remove the substance. Instead, all plaintiff offers is her conjecture that, because she fell after slipping on a liquid substance in defendant's store, defendant must be responsible for the fall. That is not sufficient to survive summary judgment under Alabama law. *See Kmart Corp.*, 769 So. 2d at 285 (citing *Hose*, 658 So. 2d at 404) ("[T]he mere fact that a business invitee is injured does not create a presumption of negligence on the part of the premises owner.") (alteration supplied).

## B. Plaintiff's Claim of Wanton Misconduct

Plaintiff abandoned her wantonness claim by failing to address defendant's arguments that the court should grant summary judgment in its favor. *See Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995). Moreover, there is no evidence that defendant consciously or intentionally carried out an act, or omitted

---

[54] To the extent plaintiff makes the argument that defendant should be held liable for negligence because it affirmatively caused the liquid to be on the floor by failing to maintain the freezer, that argument fails for the same reason: *i.e.,* there is no evidence that the liquid originated from the freezer. *See, e.g., Denmark v. Mercantile Stores Co.*, 844 So. 2d 1189, 1192 (Ala. 2002) (citations omitted) (stating that courts presume a defendant's notice of a hazardous condition when the defendant or its employees created the condition).

a duty with reckless indifference to the consequences, as is required for a claim of wantonness under Alabama law. *See Galaxy Cable, Inc. v. Davis*, 58 So. 3d 93, 101 (Ala. 2010) (quoting *Martin v. Arnold*, 643 So. 2d 564, 567 (Ala. 1994)) ("'To establish wantonness, the plaintiff must prove that the defendant, with reckless indifference to the consequences, consciously and intentionally did some wrongful act or omitted some known duty.'").

## V. CONCLUSION

Based upon the foregoing considerations, this court concludes that the affidavit of Dexter Morris should be stricken, that there are no genuine disputes as to any material fact, and that defendant is entitled to judgment as a matter of law on plaintiff's claims for negligence and wantonness. Accordingly, defendant's motion to strike the affidavit of Dexter Morris, and, its motion for summary judgment will be granted. An appropriate order consistent with this memorandum of opinion will be entered contemporaneously herewith.

**DONE** this 29th day of July, 2019.

_____
United States District Judge